IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DOUGLAS PRADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| THE CITY OF AKRON, current or former | ) |
| Akron Police Officers MARY MYERS, | ) |
| ED DUVALL, ELIZABETH | ) |
| DAUGHERTY, PAUL CALVARUSO, | ) |
| GUS HALL, ROD SMITH, SEAN | ) |
| MATHENY, DET. HACKBART, RICK | ) |
| MULLINS, DET. MCFARLAND, STEVE | ) |
| GEIGER, EDWARD MORIARTY, | ) |
| BERTINA KING, DANIEL | ) |
| ZAMPENILLI, WILLIAM SMITH, | ) |
| SGT. ERWIN, SGT. WARREN, JOE | ) |
| FORGACH, AMY FRAME WILEY, | ) |
| RON BLACK, CRAIG GILBRIDE, | )   JURY TRIAL DEMANDED |
| MIKE MATULOVICH, as yet unidentified | ) |
| current or former employees of the City of | ) |
| Akron Police Department, DR. THOMAS | ) |
| MARSHALL, SUMMIT COUNTY, OH, | ) |
| DR. LOWELL LEVINE, MICHAEL | ) |
| KUSLUSKI, as yet unidentified current or | ) |
| former employees of the State of Ohio | ) |
| Bureau of Criminal Investigation, and FBI | ) |
| Examiner THOMAS CALLAGHAN, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

NOW COMES Douglas Prade, by and through his attorneys, and complains of

Defendants THE CITY OF AKRON, current or former Akron Police Officers MARY

MYERS, ED DUVALL, ELIZABETH DAUGHERTY, PAUL CALVARUSO, GUS

HALL, ROD SMITH, SEAN MATHENY, DET. HACKBART, RICK MULLINS, DET.

MCFARLAND, STEVE GEIGER, EDWARD MORIARTY, BERTINA KING,

DANIEL ZAMPENILLI, WILLIAM SMITH, SGT. ERWIN, SGT. WARREN, JOE

FORGACH, AMY FRAME WILEY, RON BLACK, CRAIG GILBRIDE, MIKE

MATULOVICH, as yet unidentified current or former employees of the City of Akron

Police Department, DR. THOMAS MARSHALL, SUMMIT COUNTY, OH, DR.

LOWELL LEVINE, MICHAEL KUSLUSKI, as yet unidentified current or former

employees of the State of Ohio Bureau of Criminal Investigation, and FBI Examiner

THOMAS CALLAGHAN, as follows:

### Introduction

1.      Plaintiff, Douglas Prade, a decorated former captain in the Akron Police

Department, was framed for the murder of his ex-wife, Dr. Margo Prade.   Dr. Margo

Prade's murder was a horrific tragedy for Mr. Prade, their children, and the community.

This loss was only compounded eleven months later when Mr. Prade was wrongfully

convicted.  Mr. Prade lost the mother of two of his daughters and his own freedom within

the span of a year.

2.      He then served fifteen years of a life sentence for Dr. Prade's murder

before DNA testing exonerated him in 2013.  That testing demonstrated that the DNA of

the person who bit Dr. Prade during the attack in which she was murdered did not belong

to Douglas Prade.  These results confirmed every other piece of biological evidence that

exists in this case, that Douglas Prade is an innocent man.

3.      Douglas Prade did not kill Dr. Prade.  He was wrongfully convicted of her

murder.  And, in the ultimate irony, officers in the very police department that Douglas

Prade had dedicated his career to serving participated in framing him for a crime he did

not commit.   All the while, Dr. Prade's true killer remains at large.  To this day, the

Akron Police Department has failed to find the true killer.

4. It was the misconduct by Mr. Prade's fellow officers and those working in concert with them that led to his wrongful conviction. That misconduct included but was not limited to witness manipulation; fabrication, destruction, and suppression of evidence; and perjury. Mr. Prade therefore brings this action pursuant to 42 U.S.C. § 1983 and Ohio law seeking redress for the wrongs done to him, as well as to deter future misconduct and reform the improper policies and practices that emboldened the defendants to frame him and violate his rights.

## Jurisdiction and Venue

5. This Court has jurisdiction over Mr. Prade's federal claims pursuant to 28 U.S.C. § 1331, and over his state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper because, upon information and belief, nearly all of the individual defendants reside within this district, and nearly all of the events giving rise to the claims asserted herein occurred within this district.

## Parties

7. Plaintiff Douglas Prade is a 67-year old resident of Akron, Ohio, and the father of three adult daughters. At the time of his arrest, he had risen to the rank of Captain in the Akron Police Department, for whom he had been employed for 29 years.

8. Defendant City of Akron (the "City") is an Ohio municipal corporation that operates that Akron Police Department ("Department").

9. Defendants MARY MYERS, ED DUVALL, ELIZABETH DAUGHERTY, PAUL CALVARUSO, GUS HALL, ROD SMITH, SEAN MATHENY, DET. HACKBART, RICK MULLINS, DET. MCFARLAND, STEVE GEIGER, EDWARD MORIARTY, BERTINA KING, DANIEL ZAMPENILLI, WILLIAM

SMITH, SGT. ERWIN, SGT. WARREN, JOE FORGACH, AMY FRAME WILEY, RON BLACK, CRAIG GILBRIDE, MIKE MATULOVICH and other unidentified members of the Akron Police Department (the "Defendant Officers") were at all times relevant to this Complaint law enforcement officers within the Department.  At least one of the Defendant Officers was, at all times relevant here, a policymaker, or had been delegated such authority, for the City.

10.    At all times relevant to this Complaint, the Defendant Officers acted under color of law and within the scope of their employment for the City of Akron and the Department.  They are sued in their individual capacities.

11.    At all times relevant to this Complaint, DR. THOMAS MARSHALL was a consultant for the Summit County Medical Examiner, acting under color of law and within the scope of his consultation agreement with Summit County.  He is sued in his individual capacity.

12.    Defendant, COUNTY OF SUMMIT, is a chartered county government that employs the Summit County Medical Examiner to, in part, provide information for use in criminal cases.

13.    At all times relevant to this Complaint, DR. LOWELL LEVINE was a professional odontologist who participated in the investigation and prosecution of Plaintiff as a state contractor, acting under color of law and within the scope of his contract with the State of Ohio.  He is sued in his individual capacity.

14.    At all times relevant to this Complaint, MICHAEL KUSLUSKI was an employee of the State of Ohio Bureau of Criminal Investigation, acting under color of

4

law and within the scope of his contract with the State of Ohio. He is sued in his individual capacity.

15.    At all times relevant to this complaint, FBI EXAMINER THOMAS CALLAGHAN was an employee of the Federal Bureau of Investigation. He is sued in his individual capacity.

**Background**

16.    Douglas Prade was born and raised in Akron, Ohio. He served in the United States Navy and was honorably discharged. Shortly thereafter, he joined the Akron Police Department in 1968 and worked his way up the ranks, serving as a captain at the time of his arrest. At the time of his hiring, he was one of the first African-American patrolmen in the City's history.

17.    Douglas Prade married Margo Prade in 1979. They had two daughters. They divorced in 1997. Douglas remained an active part of his daughters' lives after the divorce.

**Margo Prade's Death and Police Crime Scene Investigation**

18.    On November 26, 1997, Dr. Margo Prade was fatally shot in the front seat of her van, outside of her medical practice. During the attack Dr. Prade had used her arm to attempt to push away her killer, but the killer bit her arm so hard that, through two layers of clothing – Dr. Prade's lab coat and her blouse – his teeth left a bite-mark impression on Dr. Prade's skin.

19.    Police never identified any eyewitnesses to the crime.

20.    Police called Douglas Prade to inform him about Dr. Prade's death. He arrived at her office and was distraught to learn that she had been killed.

5

## Defendants' Misconduct

21.     At the crime scene, Defendant MYERS conducted a gun-shot residue ("GSR") test on Douglas Prade's hands.  She claimed that she conducted this GSR test incorrectly and was not able to obtain any results.  In fact, this GSR test revealed that there was no gunshot residue on Mr. Prade's hands.  Defendant Myers hid the true results of this test and destroyed the evidence relating to the test in order to conceal exculpatory evidence from Mr. Prade's defense.

22.     Defendant Myer's played a major role in securing a false identification from an alleged witness.  This false identification was coerced by Defendant MYERS nearly three months after Dr. Prade's murder took place and only after another – more experienced officer - interviewed the same witness numerous times with the exact opposite results.  Indeed, Defendant MYERS' misconduct was a significant factor in Mr. Prade's wrongful conviction.

23.     Defendant MYERS went on to build a career off of Mr. Prade's wrongful conviction.  While Mr. Prade spent years wrongful imprisoned for his former wife's murder, Defendant MYERS took a job teaching criminal justice at the University of Akron.  Although she is no longer employed at the Akron Police Department, Defendant MYERS continues to be a prominent commentator on Mr. Prade's case in the media.  Indeed, Defendant MYERS frequently joins various newscasts to discuss Mr. Prade's case.  During such interviews, Defendant MYERS displays and references binders and containers of documents related to the case, many of which, upon information and belief, were never disclosed to Mr. Prade.

24.     Acting in concert with Defendant Myers, the other Defendant Officers conspired together to fabricate false evidence against Prade, including by coercing and intimidating false testimony from witnesses and manipulating the results of photo arrays. The Defendant Officers, in the course of their investigation, also manipulated witnesses to provide false or misleading inculpatory evidence, while simultaneously suppressing exculpatory evidence from Mr. Prade.

25.     In addition, Defendants MARSHALL, LEVINE, KUSLUSKI, AND CALLAGHAN, on their own and in conspiracy with the Defendant Officers, fabricated physical and purportedly scientific evidence against Plaintiff, and withheld exculpatory scientific evidence actually discovered during their investigation into the case. Collectively, the Defendants knew that the scientific evidence offered against Mr. Prade was false and was the direct result of the Defendant's misconduct.

**Douglas Prade is Convicted for Dr. Prade's Death**

26.     In September 1998, Mr. Prade was tried and convicted of aggravated murder with a firearms specification, as well as wiretapping and possession of criminal tools charges, and the convictions were affirmed.  *State v. Prade*, 139 Ohio App. 3d 676, 745 N.E.2d 475 (9th Dist.), *appeal dismissed*, 90 Ohio St. 3d 1490, 739 N.E.2d 816 (2000).

27.     At trial, the State relied heavily on the manipulated testimony of two witnesses who claimed to see Douglas Prade in the vicinity of Dr. Prade's office earlier that day and after the shooting, as well as testimony related to a bite mark that the killer made on Dr. Prade's arm through her clothing during the attack.   As stated above, that testimony was false.

28.     Other Defendants also provided false testimony at Mr. Prade's trial in an effort to secure his wrongful conviction.  The false testimony by Defendants and the manipulated testimony from witnesses that was caused by Defendants' misconduct were the basis for Mr. Prade's conviction.

### Douglas Prade Continually Asserts His Innocence

29.     Douglas Prade has always maintained that he had nothing to do with Dr. Prade's death.  After his conviction, he repeatedly sought DNA testing to help prove his innocence.

30.     He finally obtained the right to such testing in late 2010, and new DNA testing was conducted in 2011 and early 2012.  That testing, from a cutting from Dr. Prade's lab coat directly over the killer's bite mark, identified male DNA profiles from which Mr. Prade was definitively excluded.

31.     In response to this testing, the State demanded additional testing from other areas of the lab coat in an attempt to test whether these DNA profiles resulted from background contamination rather than the perpetrator leaving saliva when he bit Dr. Prade during the attack.  The background-contamination testing revealed no DNA.

32.     Plaintiff then filed a petition for post-conviction relief and an alternative motion for a new trial.  In October 2012, the trial court conducted a four-day evidentiary hearing, hearing from DNA experts and bitemark experts about the forensic evidence in the case.

33.     Following the hearing, the court issued an order on January 29, 2013, finding "as a matter of law" that Douglas Prade "is actually innocent of aggravated murder."  The court concluded that the DNA evidence discovered in 2011 and early 2012

showed that DNA profiles that were not Mr. Prade's were associated with the bitemark that Dr. Prade suffered during the attack that led to her death.

34.     The court further found that the inculpatory bitemark evidence offered at Plaintiff's trial was called into serious question and that at a new trial "the jurors would reconsider the credibility of the respective bite mark experts' testimony."

35.     Overall, the court found that "the evidence that [Plaintiff] presented in this case is clear and convincing" and that "the Court is firmly convinced that no reasonable juror would convict the Defendant for the crime of aggravated murder with a firearm." The court overturned his conviction for aggravated murder with a firearms specification, and ordered his release from prison.  Douglas Prade was released that same day.

36.     Prosecutors appealed that decision, and the matter is currently being considered by a court of appeals.

### Mr. Prade's Wrongful Conviction Was Caused by the Department's Widespread Practices, Customs, and Policies

37.     The misconduct described in this Complaint was undertaken pursuant to the policy and practice of the City of Akron in that Akron Police Department employees and agents regularly failed to disclose exculpatory evidence to criminal defendants, pursued wrongful convictions through profoundly flawed investigations and coerced testimony, and otherwise violated due process in a  similar manner to that alleged herein. The above-described widespread practices, which were so well-settled as to constitute *de facto* policy in the Akron Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

38.     Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City of Akron declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

39.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Akron in that the constitutional violations committed against Mr. Prade were committed with the knowledge or approval of person(s) with final policymaking authority for the City of Akron, and/or undertaken by a municipal agent with final policymaking authority for the City of Akron.

40.     The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above, including but not limited to personal physical injuries.

**Damages**

41.     Every wrongful conviction is horrific in its own right, but Douglas Prade's wrongful conviction is as tragic as any.  Mr. Prade lost the mother of his two daughters, his career in the Akron Police Department, and over a decade of his life.  Indeed, the inexplicable actions of  the Defendants caused Mr. Prade to spend years in prison for a crime he did not commit.  He must now attempt to make a life for himself outside of prison without the benefit of over a decade of life experiences.  He lost the fundamental freedom to live his life as an autonomous human being.  He lost the prime years of his career as a police officer, preventing him from obtaining professional advancement, and suffered the shame and humiliation of being branded a murderer.

42.     During his incarceration, Mr. Prade was stripped of the various pleasures of the human experience, from the simplest to the most important, which all free people enjoy as a matter of right.  As a member of law enforcement prior to his incarceration, he faced greater risks and stress when incarcerated .

43.     Most importantly, Mr. Prade suffered irreparable harm to his family relationships, including the ability to watch his teenage daughters grow up, to be present for family weddings, holidays, births, funerals, and other life events with loved ones. He now faces the challenges of rebuilding those relationships upon his release.

44.     As a result of the foregoing, Mr. Prade has suffered tremendous damage, including but not limited to personal physical injuries, mental suffering, and loss of a normal life, all proximately caused by Defendants' misconduct.

## LEGAL CLAIMS

**Count I:**          **42 U.S.C. § 1983 – Due Process Violation**

45.     Each paragraph of this Complaint is incorporated as if restated fully herein.

46.     The Defendants, acting individually, jointly, and/or in conspiracy with other named and unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

47.     In the manner described more fully above, the Defendants individually, jointly, and/or in concert and in conspiracy, instigated and continued the prosecution of Plaintiff without probable cause.

48.     In the manner described more fully above, the Defendants individually, jointly, and/or in concert and in conspiracy, fabricated false reports and other evidence which caused the conviction of Plaintiff.

49.     In the manner described more fully above, the Defendants individually, jointly, and/or in concert and in conspiracy, destroyed, caused to be destroyed, failed to disclose, and otherwise withheld and/or suppressed exculpatory information and material from the prosecution and thus, from Plaintiff.  This evidence included evidence of police coercion and fabrication of witness testimony, fabricated evidence, including without limitation false police reports, false forensic evidence, gun-shot residue tests, alibi evidence, crime-scene evidence containing genetic material, false bite-mark analysis**,** fabricated statements attributed to witnesses, and their own fabricated testimony offered at trial.

50.     In the manner described more fully above, the Defendant Officers individually, jointly, and/or in concert and in conspiracy, used improper and suggestive procedures to cause Plaintiff to be identified by a witness as being at the crime scene before Dr. Prade's death.  This misconduct tainted the pretrial identification of Mr. Prade, which were offered against him at trial, and the in-court identifications during his trial.

51.     Absent Defendants' misconduct, the prosecution of Plaintiff for murder could not and would have not been pursued, and Plaintiff would not have been convicted.

52.     The Defendants' misconduct directly and proximately resulted in the unjust and wrongful criminal conviction of Plaintiff and his continuing wrongful imprisonment, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

53.     Defendants were acting under color of law and within the scope of their employment when they engaged in these acts.

54.     The City is also liable because the policies, practices, customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above, including but not limited to personal physical injuries.

55.     The misconduct described by this Count was objectively unreasonable and was undertaken intentionally, in bad faith, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

56.     As a direct and proximate result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to loss of liberty, personal physical injuries, and emotional distress.

**Count II:     Due Process Violation - *Bivens v. Six Unknown Named Agents of the FBI*, 403 U.S. 388 (1971)**

57.     Each paragraph of this Complaint is incorporated as if restated fully herein.

58.     As described more fully above, Defendant CALLAGHAN, while acting individually, jointly, and in conspiracy with other named and unnamed individuals, as well as under color of law and within the scope of his employment, deprived Plaintiff of his constitutional right to a fair trial.

59.     In the manner described more fully above, Defendant CALLAGHAN deliberately withheld exculpatory evidence, and fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

60. Defendant CALLAGHAN's misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

61. As a result of this violation of his constitutional right to a fair trial, Plaintiff was injured, including, but not limited to, emotional distress, as is more fully alleged above.

62. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**Count III: 42 U.S.C. § 1983 – Failure to Intervene**

63. Each paragraph of this Complaint is incorporated as if restated fully herein.

64. In the manner described above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

65. As a direct and proximate result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, personal physical injuries, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

66.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

67.     The misconduct described in this Count was undertaken by employees of the City of Akron, including but not limited to the named Defendants, pursuant to the City of Akron's policy and practice in the manner described in the preceding paragraphs.

**Count IV:**     **Failure to Intervene -** ***Bivens v. Six Unknown Named Agents of the FBI*, 403 U.S. 388 (1971)**

68.     Each paragraph of this Complaint is incorporated as if restated fully herein.

69.     In the manner described above, during the constitutional violations described herein, Defendant CALLAGHAN stood by without intervening to prevent the misconduct.

70.     As a result of Defendant CALLAGHAN's failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, personal physical injuries, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

71.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**Count V:**     **42 U.S.C. § 1988 – Conspiracy to Deprive Plaintiff of His Constitutional Rights**

72.     Each paragraph of this Complaint is incorporated as if restated fully herein.

73.     After the death of Margo Prade, the Defendants, acting within the scope of

their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights to due process and a fair trial, all as described in various paragraphs of this Complaint.

74.     Additionally, before and after Plaintiff's conviction, the Defendants further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or his more timely exoneration.

75.     In this manner, the Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

76.     In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as fabricating evidence, withholding exculpatory evidence, coercing false statements, conducting improperly suggestive photo arrays, committing perjury during hearings and trials – and was an otherwise willful participant in joint activity.

77.     As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and he suffered injuries, including but not limited to loss of liberty, personal physical injuries, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

78.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to

Plaintiff's rights.

79.     The misconduct described in this Count was undertaken by employees of the City of Akron, including but not limited to the named Defendants, pursuant to the City of Akron's policy and practice in the manner described in the preceding paragraphs.

**Count VI:      Conspiracy - *Bivens v. Six Unknown Named Agents of the FBI*, 403 U.S. 388 (1971)**

80.     Each paragraph of this Complaint is incorporated as if restated fully herein.

81.     Prior to arresting Plaintiff, Defendant CALLAGHAN reached an agreement with the other Defendants to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

82.     In addition, before and after Plaintiff's conviction, Defendant CALLAGHAN further conspired, and continues to conspire, to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

83.     In this manner, Defendant CALLAGHAN, acting in concert with the other Defendants and other unknown co-conspirators, including persons who are and who are not members of the Akron Police Department or FBI, has conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

84.     In furtherance of the conspiracy, Defendant CALLAGHAN committed overt acts and was an otherwise willful participant in joint activity.

85.     As a direct and proximate result of the illicit prior agreement referenced

above, Plaintiff's rights violated, and he suffered damages, including but not limited to loss of liberty, personal physical injuries, and emotional distress.

**Count VII:    Ohio State Law - Malicious Prosecution**

86.    Plaintiff incorporates every paragraph in this Complaint as if fully set forth here.

87.    The Defendants, acting individually and in conspiracy with one another, instigated and continued the prosecution of Plaintiff without probable cause and acting out of malice.

88.    As a result of the malicious prosecution, Plaintiff was falsely convicted for a crime of which he was innocent.

89.    Defendants were acting under color of law and within the scope of their employment when they engaged in these acts.

90.    As a direct and proximate result of this misconduct, Plaintiff sustained, and continued to sustain, injuries as set forth above, including pain, suffering, and personal physical injuries.

**Count VIII:    Ohio State Law – Infliction of Emotional Distress**

91.    Each paragraph of this Complaint is incorporated as if restated fully herein.

92.    The Defendants, acting individually and in conspiracy with other Defendants, intentionally and/or recklessly engaged in extreme and outrageous conduct that caused Plaintiff severe emotional distress and also bodily harm resulting from his distress.

93.    As a direct and proximate result of the Defendants' actions, Plaintiff

suffered and continues to suffer severe emotional distress.

94.     Because the Defendants were acting within the scope of their employment, the City of Akron, Summit County, and Bureau of Criminal Investigation, respectively, are liable as their employers for any resulting damage and any award of attorneys' fees.

**Count IX:       Ohio State Law – Spoliation of Evidence**

95.     Each paragraph of this Complaint is incorporated as if restated fully herein.

96.     The Defendants, acting individually and in conspiracy with other Defendants, willfully destroyed evidence in a manner that disrupted Plaintiff's criminal proceedings, knowing that there was pending or probable litigation that would involve this evidence.

97.     As a result of the absence of this evidence, Plaintiff was falsely convicted of a crime for which he was innocent.

98.     As a direct and proximate result of Defendants' actions, Plaintiff sustained, and continues to sustain, injuries as set forth above, including pain, suffering, and personal physical injuries.

**Count X:        Ohio State Law - Respondeat Superior**

99.     Each paragraph of this Complaint is incorporated as if restated fully herein.

100.    In committing the acts alleged in the preceding paragraphs, the Defendants were employees or agents of the City of Akron, Summit County, and Bureau of Criminal Investigation, respectively, acting at all relevant times within the scope of their employment.

101.    Defendants City of Akron, Summit County and the Bureau of Criminal Investigation are liable as principal for all torts committed by their agents.

WHEREFORE, Plaintiff Douglas Prade respectfully requests that this Court enter judgment in his favor and against Defendants THE CITY OF AKRON, current or former Akron Police Officers MARY MYERS, ED DUVALL, ELIZABETH DAUGHERTY, PAUL CALVARUSO, GUS HALL, ROD SMITH, SEAN MATHENY, DET. HACKBART, RICK MULLINS, DET. MCFARLAND, STEVE GEIGER, EDWARD MORIARTY, BERTINA KING, DANIEL ZAMPENILLI, WILLIAM SMITH, SGT. ERWIN, SGT. WARREN, JOE FORGACH, AMY FRAME WILEY, RON BLACK, CRAIG GILBRIDE, MIKE MATULOVICH, as yet unidentified current or former employees of the City of Akron Police Department, DR. THOMAS MARSHALL, SUMMIT COUNTY, OH, DR. LOWELL LEVINE, MICHAEL KUSLUSKI, as yet unidentified current or former employees of the State of Ohio Bureau of Criminal Investigation, and FBI Examiner THOMAS CALLAGHAN, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial

on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Tara Thompson
Attorneys for Plaintiff


Jon Loevy
Tara Thompson
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, IL  60607
(312) 243-5900